IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA<br><br>v.<br><br>BRUCE JEREMIAH | Cr. No. 1:12-cr-180M |
|---|---|

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR REPLEVIN

The Defendant has requested the return of property seized pursuant to two search warrants and a seizure warrant. In order to succeed, he must show beyond a preponderance of the evidence that: 1) the government no longer needs the property as evidence; 2) he is entitled to lawful possession of the seized property; *and* 3) the property is not contraband or subject to forfeiture. He cannot show any of the three. His motion should be denied.

## I. FACTS

On December 19, 2012, a grand jury returned a two count indictment charging the Defendant, Andrew Jeremiah, his brother Bruce Jeremiah, and Anthony Simone, Sr. with transporting and conspiring to transport stolen property in interstate commerce. The Defendants stole over 200,000 gallons of used vegetable oil from hundreds of restaurants in Rhode Island and Massachusetts and sold it to a New Hampshire-based company that processes it for use in animal feed and biofuel.[1] The Jeremiah brothers operated out of a warehouse at 25–31 Conduit Street in Central Falls, Rhode Island and the brothers' residence at 35 Whitewood Drive in

[1] The full facts of the investigation are set forth in the Gov't' Omnibus Mem. in Supp. of its Objections to Def.'s Mots. to Dismiss, ECF No. 51-1.

Cranston, Rhode Island. The Jeremiah brothers used several fictitious company names, including Jeremiah Motors Corp., Removal Services, and Microgen Energy. Defendant Simone served as the Jeremiahs' truck driver.

Prior to the indictment, on November 9, 2012, federal agents executed search warrants for the warehouse (Exhibits A and D) and the residence (Exhibit B and E). Those warrants authorized the seizure of "evidence, fruits, and instrumentalities of a crime," including, but not limited to, business records, oil, and vehicles used to transport oil. *See* Exhibits A, B, D, E. During the search of the warehouse, agents seized over 6,000 gallons of used vegetable oil, a Ford truck, and business records. *See* Exhibit A at 3. During the search of the residence, agents seized business records, computers, and $29,230 in cash. *See* Exhibit B at 3. After the execution of the search warrant, Defendant Andrew Jeremiah admitted to agents that "it's obvious some of the oil is stolen." *See* Gov't' Omnibus Mem. in Supp. of its Objections to Def.'s Mots. to Dismiss, ECF No. 51-1 at 9. In addition, Andrew Jeremiah denied keeping a list of customers and neither Andrew nor Bruce Jeremiah were able to name more than two small customers, even though they had "a lot". *See id.* at 9–10.

On January 23, 2013, agents seized $31,881.03 from a Bank of America account in the name of Microgen Energy pursuant to a judicially authorized warrant to seize property subject to forfeiture. Exhibits C, F.

On June 28, 2013, the Defendant filed a Motion to Replevin Unconstitutionally Seized Personality and a supporting motion. ECF No. 45.

Trial is scheduled for August.

## II. ARGUMENT

The Defendant has requested the return of property seized by the United States during this investigation, including business records, money, used vegetable oil, and a truck. Federal Rule of Criminal Procedure 41(g)[2] allows "a person aggrieved by an unlawful search and seizure of property" to move for the property's return.[3]

Rule 41 does not provide a standard for when property should be returned. Advisory committee's note (1989). Instead, "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." *Id.* There is a presumption that the United States may retain property necessary to investigate or prosecute federal crimes. *Id.* However, the United States may not retain property if its "legitimate interests can be satisfied even if the property is returned." *Id.* When returning property, a court "may impose reasonable conditions to protect access to the property and its use in later proceedings." Rule 41(g).[4] Although the Defendant's motion focuses on the validity of the search warrant, the Government may generally retain illegally seized evidence provided there was not gross government misconduct.[5] *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir.1993).

---

[2] Until 2002, the substance of Rule 41(g) was found at Rule 41(e). *See* Fed. R. Crim. P. advisory committee notes (2002).

[3] Under Rule 41(g), "an evidentiary determination is necessary to ensure that there is sufficient evidence to support the court's decision." *United States v. Cardona-Sandoval*, 518 F.3d 13, 17 (1st Cir. 2008). The Court is not required to hold a hearing and may instead rely on documentary evidence. *Id.* ("We . . . do not now hold that an evidentiary hearing is necessary. Affidavits or documentary evidence . . . may suffice . . . ."). Pleadings are not evidence. *See id.* at 17 (citing *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007)). The United States believes that the *affidavits* filed in this case provide sufficient information for the Court to make an evidentiary determination.

[4] The Court should not require to United States to photocopy the Defendant's business records and return the originals, even though Rule 41 permits the Court to do so. *See* advisory committee notes (1989). The United States has offered to copy specific records at the Defendants request. *See In re Search of Office of Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) (government could keep originals when defendant was given copies). Second, the Defendants do not need the original records because a) their business revolved around stealing oil and b) the Defendants claim to conduct their legitimate oil collection business without records. Omnibus Mem. at 9-10. Therefore the Court should not order the United States to return the original documents.

[5] "Rule 41(g) applies to legally, as well as to illegally, seized property." *Perez Colon v. Comacho*, 206 Fed. Appx. 1, 3 (1st Cir. 2006). In this case, the warrants were legal, and even if they weren't, government misconduct has not risen to the level necessary to justify returning the property. First, the warrants are valid and the Defendant's

The First Circuit holds that "a Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, *or* the government's need for the property as evidence continues." *United States v. Cardona-Sandoval*, 518 F.3d 13, 15 (2008) (emphasis added) (internal citation and quotation omitted). All three of those conditions exist in this case.

**A. Burden and Evidentiary Standard**

The preponderance standard applies to Rule 41(g) proceedings because they "are civil in nature." *United States v. Uribe-Londono*, 238 Fed. Appx. 628, 630 (1st Cir. 2007) (holding that a standard less than beyond reasonable doubt applies) (citing *United States v. Maez*, 915 F.2d 1466, 1468 (10th Cir. 1990) ("The standard of proof is a preponderance of the evidence.")). In cases like this one, where a prosecution is ongoing, the Defendant, and not the United States, bears the burden of proving that the Defendant is entitled to the property. *See United States v. Albinson*, 356 F.3d 278, 280 (3d Cir. 2004) (the burden is on the defendant prior to "the conclusion of a criminal proceeding"); *see also Jackson v. United States* 526 F.3d 394, 396 (8th Cir. 2008) ("The *movant* must establish lawful entitlement to the property" even after trial (emphasis added) (citation omitted)); *United States v. Nelson*, 190 Fed. Appx. 712, 714 (10th

---

assertion that there was no probable cause is wrong. The United States has attached lengthy affidavits supporting the warrants, so the Court can satisfy itself there was probable cause for the warrants to be issued. Exhibits D-F.

Second, the United States could retain the property even if it were seized unlawfully. Advisory committee note (1989) ("Rule 41(g) is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, *even if the evidence may have been unlawfully seized*." (emphasis added)). Courts have only ordered the return of evidence in exceptional circumstances. *See Comprehensive Drug Testing*, 621 F.3d 1162, 1172 (9th Cir. 2010) (affirming order returning seized evidence in "an obvious case of deliberate overreaching by the government in an effort to seize data as to which it lacked probable cause."), *but see Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir.1993) (holding that the United States may retain copies of documents seized without a warrant, even though the government "exhibited callous disregard for Ramsden's constitutional rights"). The government has not deliberately overreached. Therefore, even if the seizures were illegal, the Court should not order the United States to return the evidence under Rule 41(g).

Cir. 2006) ("[t]he defendant bears the burden" until the defendant's appeal on a different issue is resolved); *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). The United States only bears the burden when the criminal case is complete since "the property in question [would] no longer [be] needed for evidentiary purposes." *Nelson*, 809 F.2d at 1369; *see United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007) (government bears burden *after* prosecution is complete).

**B. Defendant is not Entitled to the Return of the Property**

The Defendant cannot prove that the United States no longer needs the property as evidence, he is entitled to the property, and the property is not subject to forfeiture.

1. <u>The Seized Property is Needed as Evidence</u>

The 1989 advisory committee notes to Rule 41 are explicit— if the United States needs the seized property for a prosecution, "retention is generally reasonable." *See In re Search of Office of Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) (Rule 41(g) is "not intended to deny the government the use of evidence it needs during its investigations and prosecutions.") Here, the Defendants are charged with stealing waste vegetable oil and transporting it across state lines. The United States requires the seized property, including business records, oil, and other property, to prepare its case and use at trial. This case centers on stolen oil. The Defendants have admitted that some of the seized oil was stolen. Omnibus Mem. at 9–10. It is therefore evidence.[6]

The records seized during the search include, but are not limited to, bank records, lists of restaurants to be targeted, and schedules showing how much oil the Defendants stored and

[6] The United States is willing to sell the vast majority of the oil and place that money in escrow until verdict. However, the oil and any proceeds from a sale of the oil should not be returned to the Defendant until after a not-guilty verdict or sentencing. *See supra* Part II.B.2.

shipped. These records are necessary for the United States to assemble its case, prepare witnesses, present its case-in-chief, and cross examine witnesses.

2. Stolen Property cannot be Lawfully Possessed by the Thief

In order to succeed on his motion, the Defendant must prove that the property is lawfully his. Stolen property lawfully belongs to the victim and not the thief. Therefore stolen property cannot be returned under Rule 41(g). *See United States v. Fitch*, 27 Fed. Appx. 888, 892 (9th Cir. 2001); *United States v. Harris*, 96 F.3d 1453 (10th Cir. 1996); *see also Green v. United States*, 90 F. Supp. 2d 229, 231 (E.D.N.Y. 2000). The United States has evidence that the defendants stole all of the seized oil. Even the Defendants have admitted that at least some of the seized oil was stolen. Omnibus Mem. at 9–10. In addition, Defendants have told agents that they did not keep accounts or even lists of their clients, even though they had "a lot" of clients. *Id.* Nonetheless, in his motion, the Defendant avers that he acquired some of the seized oil legitimately. Even if that were true, legitimate oil cannot be separated from the admittedly stolen oil. The Defendant must prove that he is lawfully entitled to the *entirety* of any property for the Court to return it to him. If the Court returned even a small portion of the seized oil, that oil would almost certainly contain some stolen oil. It is improper for the Court to give a thief his ill-gotten gains.

3. The Seized Property is Subject to Forfeiture

Property that constitutes or is derived from proceeds traceable to the interstate transportation of stolen property, or a conspiracy to do so, is subject to forfeiture. This includes "[a]ny property, which constitutes or is derived from proceeds traceable to . . . any offense

constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18]), or a conspiracy to commit such offense." 18 U.S.C. § 981 (a)(1)(C). Specified unlawful activity includes "any act or activity constituting an offense listed in section 1961(1) of" Title 18. 18 U.S.C. § 1956(c)(7)(A). Interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, is listed in 18 U.S.C. § 1961(1)(B).

In addition, the United States may forfeit substitute assets under 21 U.S.C. § 853(p) (as incorporated by 28 U.S.C. § 2461(c)) when:

> as a result of any act or omission of the defendant [forfeitable property]—
> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)–(2). Substitute assets include "any other property of the defendant." 18 U.S.C. § 853(p)(2). Money that is not traceable to the proceeds of criminal activity is considered a substitute asset. *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (holding money was a substitute asset when the defendant had "dissipated or otherwise disposed of the proceeds of her drug trafficking").

In this case, the oil, money, and other property are subject to forfeiture as property that constitutes or is derived from proceeds of the alleged criminal activity and as substitute assets. *See* Indictment 10–12 (forfeiture allegation). In 2012, the Defendants received approximately $263,000 in checks for selling the stolen oil. *See* Exhibit F, Seizure Warrant Application and Affidavit ¶ 11. Those funds were deposited into an account in the name of Removal Services and comprised the vast majority of the nearly $280,000 held in that account during 2012. *Id.* ¶¶ 11, 14. The money seized pursuant to the seizure warrant is directly traceable to the deposited funds. *Id.* ¶¶ 11–16. The cash found in the boot represents part of the $65,000 in cash that the

Defendants withdrew from the Removal Services account. *Id.* ¶ 14. Even if the Defendant can prove that the cash found in the boot came from another source, it is still forfeitable as a substitute asset, because the defendants have disposed of the money they received for selling the stolen oil. *See Candelaria-Silva*, 166 F.3d at 42.

The seized oil is the proceeds of illegal activity and is therefore subject to forfeiture. During an interview with FBI Agents, Defendant Andrew Jeremiah admitted "it's obvious some of the oil is stolen." Omnibus Mem. at 9. The seized oil is also forfeitable as a substitute asset for at least two reasons. First, the United States may forfeit a substitute asset where a defendant has sold a forfeitable asset to a third party. 21 U.S.C. § 853(p)(1)(C). In this case, the Defendants have already sold the vast majority of the oil they stole to a New Hampshire-based company. Therefore, the oil, computers, truck, and other seized property is forfeitable as substitute assets. [7] Second, the United States may forfeit property that has been irrevocably comingled with forfeitable property. 21 U.S.C. § 853(p)(1)(E). As stated above, the United States believes that all of the seized oil was stolen. However, even if the Defendants did acquire part of the seized oil legitimately, they mingled that oil with oil they have admitted to stealing. Omnibus Mem. at 9–10. It is impossible to divide the stolen oil from any legitimate oil. Therefore any legitimate oil is forfeitable as a substitute asset.

## III. CONCLUSION

The Defendant's motion requires *him* to prove beyond a preponderance of the evidence that: 1) the government no longer needs the property as evidence; 2) he is entitled to lawful

[7] In his motion, the Defendant also requests the return of "business accounts seized by Newport Biodiesel." The Government is unaware of what the Defendant refers to. The United States has not seized any accounts at Newport Biodiesel. *See* Exhibits A–C (search warrant returns for this case). The United States cannot return something it has never possessed.

possession of the seized property; *and* 3) the property is not contraband or subject to forfeiture. The information included in the attached affidavits show that the Defendant is unable to do so. Therefore the Defendant's motion for replevin should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

PETER F. NERONHA
United States Attorney

/s/ BENJAMIN S. TOWBIN
BENJAMIN S. TOWBIN
Special Assistant United States Attorney
New York Bar #5061726
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5046
(401) 709-5001 (fax)
Benjamin.towbin@usdoj.gov

CERTIFICATION

I hereby certify that on July 12, 2013, a copy of the within Government's Memorandum of Law in Opposition to Defendant's Motion for Replevin was filed electronically and is available for viewing and downloading from the ECF system.

/s/ BENJAMIN S. TOWBIN
BENJAMIN S. TOWBIN
Special Assistant United States Attorney
New York Bar #5061726
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5046
(401) 709-5001 (fax)
Benjamin.towbin@usdoj.gov