IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. No. 1:12-cr-180M |
| v. | |
| BRUCE JEREMIAH | |

GOVERNMENT'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTIONS TO SUPPRESS

The Defendant has requested the suppression and return of all property seized during the

execution of two search warrants targeting his residence and place of business.  The evidence

seized from both the defendant's place of business on Conduit Street in Central Falls, Rhode

Island and his home on Whitewood Drive in Cranston, Rhode Island were taken by authorized

federal agents pursuant to a valid search warrant supported by probable cause.  Accordingly, his

motion should be denied.[1]

## I.   FACTS[2]

On December 19, 2012, a grand jury returned a two count indictment charging the

Defendant, Andrew Jeremiah, his brother Bruce Jeremiah, and Anthony Simone, Sr. with

transporting and conspiring to transport stolen property in interstate commerce.  The Defendants

stole used vegetable oil from restaurants in Massachusetts and sold it to a New Hampshire-based

---

[1] Although the Defendant has asked for a hearing, the Government does not believe one is necessary.  *See*
Def. Mot., ECF 71-1 p. 6.  "A criminal defendant has no presumptive right to an evidentiary hearing on a motion to
suppress." *United States v. Cintron*, 2013 WL 3779058 *3 (1st Cir. 2013) (citing *United States v. D'Andrea*, 648
F.3d 1, 5 (1st Cir.2011)). "A hearing is required only if the movant makes a sufficient threshold showing that
material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.  Most
importantly, the Defendant must show that there are factual disputes which, if resolved in his favor, would entitle
him to the requested relief." *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996)).  As shown below, the
Defendant has not demonstrated that there are factual disputes material to the warrant.
[2] These facts are taken from Government's Memorandum of Law in Opposition to Defendant's Motion for Replevin,
ECF 54-1.

company that processes it for use in animal feed and biofuel.[3]  The Jeremiah brothers operated

out of a warehouse located on Conduit Street in Central Falls, Rhode Island and their residence

at 35 Whitewood Drive in Cranston, Rhode Island.  The Jeremiah brothers conducted business

through several fictitious company names, including Jeremiah Motors Corp., Removal Services,

and Microgen Energy.

Prior to the return of an indictment federal agents executed search warrants for the

defendants' business on Conduit Street (ECF 54-2, 54-5) and their Whitewood Drive residence

(ECF 54-3, 54-6).  Both the warrant application and the search warrant itself referenced an

attachment that provided a comprehensive list of the types of evidence agents were authorized to

search for and seize.  *See* ECF 54-2, 54-3, 54-5, 54-6.  During the search of the warehouse,

agents seized over 6,000 gallons of used vegetable oil, a Ford truck that they had previously seen

being used to carry out the theft and transport of vegetable oil and business records matching

those described in the warrant attachment.   *See* ECF 54-2 at 3.  During the search of the

residence, agents seized business records, computers, and $29,230 in cash.  *See* ECF 54-3 at 3.

While agents were carrying out the search of his residence, defendant Andrew Jeremiah admitted

to agents that "it's obvious some of the oil is stolen."  *See* Gov't' Omnibus Mem. in Supp. of its

Objections to Def.'s Mots. to Dismiss, ECF No. 51-1 at 9.  In addition, Andrew Jeremiah denied

keeping a list of customers and neither Andrew nor Bruce Jeremiah was able to name more than

two small customers who supplied them with vegetable oil.  The defendant however claimed to

have "a lot" of them.  *See id.* at 9–10.

---

[3] The full facts of the investigation are set forth in the Gov't Omnibus Mem. in Supp. of its Objections to Def.'s Mots. to Dismiss, ECF No. 51-1.

## II.     ARGUMENT

The defendant has requested the suppression and return of property seized by the United States during this investigation, including business records, money, used vegetable oil, and the aforementioned Ford truck.  The defendant contends that the search warrants for the warehouse and residence were "general warrants" in violation of the particularity requirement of the Fourth Amendment.  The defendant claims that the warrant for the warehouse did not accurately describe the warehouse as having multiple tenants and that neither the warehouse nor residence warrant particularly described the items to be seized.  The defendant's argument is both factually and legally incorrect.  Both of the warrants issued by the magistrate judge are valid.  The validity of the warrants can be found in the fact that 1) the Conduit Street business was accurately described and sufficiently channeled the searching agents' discretion and any error in describing the warehouse is immaterial.  The seizure of all business records in question was specifically authorized by the warrant and Attachment B and would otherwise be justified by the fact that criminal activity pervaded the business.  The "business" consisted of four people, three of who are charged in this indictment, each of who was actively engaged in the criminal endeavor. Finally, assuming arguendo that the warrants did lack particularity, the good faith exception prevents suppression.  *See United States v. Leon*, 468 U.S. 897, 926 (1984).

The defendant rejects the idea that a search warrant may rely upon an attachment to establish probable cause and provide particularity.  His claim is legally incorrect.  *Rivera Rodriguez v. Beninato*, 469 F.3d 1, 5 (1st Cir. 2006).

Finally, the Defendant avers that even if valid, the warrants did not authorize the seizure of the Ford truck, the used vegetable oil, or the money.  The defendant's claim that the warrant did not cover the seizure of the Ford truck is completely off the mark.  Indeed ,Attachment B

-3-

specifically authorized the seizure of vehicles used to transport stolen oil.  ECF 54-5 Attachment

B.  The seizure of the cash and oil was likewise proper, even if not described in the text of the

warrant, because they were in the plain view of the officers executing the warrant and were

easily identified as evidence of the offenses being investigated.

A.      Particularity

A valid search warrant must be supported by probable cause and "particularly describ[e]

the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.  The

remedy for evidence seized in violation of the Fourth Amendment is exclusion.  *United States v.*

*Woodburry*, 511 F.3d 93, 99 (1st Cir. 2007) ("The usual remedy for seizures made with a

defective warrant is suppression in order to deter future violations of the Fourth Amendment."

(citation and brackets omitted).  If officers properly execute an insufficiently particular search

warrant authorized by a neutral, detached magistrate, exclusion of the evidence is only proper if

"officers were dishonest or reckless in preparing their affidavit or could not have harbored an

objectively reasonable belief in the existence of probable cause."  *Leon*, 468 U.S. at 919 n.19,

926; *see Woodburry*, 511 at 99.

The burden of proof in establishing the unlawful nature of a search lies with the

defendant, unless the government "act[s] without a warrant."  *United States v. Bonilla Romero*,

839 F.2d 39, 45 (1st Cir. 1987).  Each of the challenged searches was conducted pursuant to duly

authorized search warrants.  ECF 54-2, 54-3, 54-4.  Thus, the burden of proof lies with the

defendant.  In order for the court to suppress the seized evidence, the d*efendant* must prove that

the officers 1) failed to have "an objectively reasonable belief" that the warrant was valid; 2) the

officers were dishonest or reckless in preparing their affidavit; or 3) improperly executed the

warrant.  The Defendant cannot do so because the warrants are supported by probable cause,[4]

were sufficiently particularized, and were properly executed.

       1.       Particularity of the Warehouse

A warrant must particularly describe the location to be searched as well as the items to be

seized.  "The test for determining the adequacy of the description of the location to be searched

is whether the description is sufficient to enable the executing officer to locate and identify the

premises with reasonable effort, and whether there is any reasonable probability that another

premise might be mistakenly searched." *United States v. Bonner*, 808 F.2d 864, 866–67 (1st Cir.

1986).  The Defendant has argued that the warrant for the warehouse and supporting affidavit are

not sufficiently particularized because on its face, the warrant allowed agents to search the entire

warehouse and the address of one of the buildings is unclear. The warrant application and the

warrant itself specifically reference a separate attachment that fully describes the location to be

searched (Attachment A).  Attachment A is a detailed description of the premises to be searched

and leaves absolutely nothing to the imagination.  No reasonable law enforcement officer would

be left to guess where he was authorized to search.  The language describing the place to be

searched is set forth below.

> The property to be searched is 13, 25, and 31 Conduit St., Central Falls,
> Rhode Island.  The property consists of an industrial warehouse type building
> occupied by the JEREMIAHS and being used to commit the TARGET
> OFFENSES.  According to Central Falls Code Inspection Office officials
> although 13, 25, and 31 Conduit appear to be different addresses, they are all the
> same building.  The property is located at the northwest corner of the intersection
> of Conduit Street and Duchess Way in Central Falls, RI.  The building has a glass
> door facing Conduit St. labeled "25" and large and small garage bay doors facing
> Conduit St.  These garage bay doors are the doors through which your affiant has
> seen the tanker truck bearing Rhode Island Commercial License plate
> "52458"enter and park.  The portion of the building with white siding contains

---

[4] The United States will not address probable cause in this motion because it is not the focus of the Defendant's
motions, but can provide supplemental briefing at the Court's request.

Bruce's office and the entry port through which the cooking oil is pumped into the building.

This description is not the product of guesswork or "off the cuff" approximations as to where the agents sought to search.  It is a detailed and exacting description which narrowly tailored the officers' discretion.  It evidences a conscientious effort on the part of the affiant/applicant to avoid any claims of a lack of particularity.

a.       *Warrant is Valid In Spite of Presence of Multiple Tenants*

Generally, warrants must identify which unit is to be searched in a multiunit building. *United States v. Perez*, 484 F.3d 735, 741 (1st Cir. 2007).  Nonetheless, a warrant not identifying a specific unit to be searched is valid if either "there is probable cause to search each unit; the targets of the investigation have access to the entire structure; or (3) the officers reasonably believed that the premises had only a single unit." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007), *cited with approval in United States v. Mousli*, 511 F.3d 7, 12 (1st Cir. 2007) (validating search of building that officers reasonably, but incorrectly believed to be one unit); *see also Maryland v. Garrison,* 480 U.S. 79, 85-89 (1987) (validating search of 3rd floor of an apartment building that officers reasonably, but incorrectly believed to be one unit).  *See generally* 41 Geo. L.J. Ann. Rev. Crim. Proc. 30-31 (2012) (collecting cases).  When reviewing a warrant, courts "look to the information in possession of the police and magistrate *at the time the warrant was issued*." *Perez*, 484 F.3d at 741 (emphasis added); *see Mousli*, 511 F.3d at 13 (police "made a considerable effort to gather as much information as possible" and "used all of the information reasonably available to them to secure as particularized a warrant as possible.").

In *Garrison*, the Supreme Court held that a search was valid where police officers obtained a warrant for the third floor of an apartment building, not realizing that the third floor

contained multiple units. 480 U.S. at 85-87. In that case, police attempted to confirm the

occupancy of the third floor using surveillance, as well as police and public utility records. *Id.* at

85 n.10. The Court held that although "arguments can certainly be made" that police should

have known there were multiple units, the police investigation reasonably pointed to the

existence of only one unit on the third floor. *Id.*

The warrant in this case authorized agents to search the entirety of 13, 25, and 31 Conduit

Street. That warrant is valid because the defendants had access to the entire area searched by the

agents. As in *Mousli* and *Garrison*, agents attempted to gather as much information as possible

and used that information to secure a particularized warrant.

The United States took reasonable steps to confirm the layout and occupancy of the

building. As in *Mousli*, agents attempted to confirm the layout of the building with other

government agencies. *See* 511 F.3d at 13 (confirming occupancy with Registry of Motor

Vehicles). In October of 2012, police interviewed a member of the Central Falls Division of

Code Enforcement who had visited the building during the summer of 2012. *See* 54-5 ¶ 58. The

information provided to police was that although tax assessor records identify the addresses as

three separate buildings, they were in fact the same building. Furthermore, that official

described the building as having a long hallway that leads to an open bay. A drawing on a tax

assessment provided by Code Enforcement depicted an open floor plan.

Over the course of the investigation, agents observed the defendants using many parts of

the building. For example, agents observed the defendants pumping oil through a hole in the

wall at the west end of the front of the warehouse. *See* ECF 54-5 Attachment B. They also

observed the defendants use a pedestrian entrance in the middle of the warehouse. In addition,

defendant Simone generally parked the truck used to steal oil in the small garage bay near the

east end of the front of the warehouse.  Furthermore, the defendants used the loading dock area

on the side of the warehouse.  From all outside appearances, the defendants had access to the

entire warehouse.

      b.   *Arguably Deficient Address is Immaterial*

   The Defendant argues that the warrant is not particularized because the address is 13, 23,

and 31, and not, as the search warrant says, 13, 25, 31.[5]  Courts have consistently held that a

mistake in the address of a building is not material to and does not invalidate a warrant, provided

that the warrant otherwise describes the building or the agents have personal knowledge of the

correct place to be searched.  *See e.g. United States v. Johnson*, 437 F.3d 69, 73 (D.C. Cir. 2006)

(wrong address, but physical description of building was provided and officers were familiar

with address of place to be searched); *United States v. Jones*, 208 F.3d 603, 606 (7th Cir. 2000)

(one digit error in address); *United States v. Palega*, 556 F.3d 709, 713-14 (8th Cir. 2009)

(wrong house number); *United States v. Brakeman*, 475 F.3d 1206, 1212 (10th Cir. 2007)

(neighbor's address listed); *United States v. Burke*, 784 F.2d 1090, 1092-93 (11th Cir. 1986)

(nonexistent street name listed).  *See generally* 41 Geo. L.J. Ann. Rev. Crim. Proc. 31 n.76

(collecting cases).  In this case, the United States included a detailed description *and* photograph

of the warehouse.  *See* ECF 54-5 Attachment B.  In addition, the affiant had conducted

significant surveillance at the warehouse and was present for part of the search.  Any mistake in

the warrant as to the street number of this building, that is described in detail and of which a

photograph was supplied to the issuing magistrate, is immaterial.

   In his memorandum, the defendant requests an evidentiary hearing on the accuracy of

the address in the warrant.  *See* pp. 5-6.  Allegations of a factual mistake or falsehood in an

---

[5] It is interesting to note that records obtained from Abenaqui, the commercial carrier responsible for hauling the stolen oil from the defendants business to New Hampshire lists the defendant's business address as **35** Conduit Street an address presumably supplied by the defendant himself.

affidavit must be resolved at a *Franks* hearing.  *See Franks v. Delaware*, 438 U.S. 154, 155–56

(1978).  In support of his request for a hearing, the Defendant quotes *United States v. D'Andrea*,

648 F.3d 1, 12 (1st Cir. 2011) (*Franks* hearing necessary if defendant makes a "substantial

preliminary showing that a false statement knowingly and intentionally or with reckless regard

for the truth was included by the affiant in the warrant affidavit and [] the allegedly false

statement is necessary to the finding of probable cause").

However, last year, the First Circuit clarified that a *Franks* hearing is not always

appropriate:

> [T]o get a *Franks* hearing, a party *must* first make two substantial preliminary
> showings: (1) that a false statement or omission in the affidavit was made
> knowingly and intentionally or with reckless disregard for the truth; and (2) the
> falsehood or omission was necessary to the finding of probable cause.  *Failure to
> make a showing on either element dooms a party's hearing request*."

*United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir 2012) (citations omitted) (emphasis

added).

The Defendants request for a *Franks* hearing should be denied for three reasons.

First, no false statements were made. Secondly, even if an incorrect statement related to

the address was made, it was not made "knowingly and intentionally" or with reckless

disregard for the truth; and finally, the accuracy of the address is not necessary to the

finding of probable cause.

### B.     Particularity of Objects to be Seized

The Defendant appears to argue that the warrant is not particular because it did

not on its face particularize the items to be seized and because, even if Attachment B to the

warrant is incorporated into the warrant, it is still insufficiently particular because it allows the

seizure of categories of information.

1.     *A Warrant May Incorporate a Description of Items to be Seized*

Warrants must describe on their face the place to be searched or items to be seized.  *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  However, this requirement is met when a warrant incorporates an attachment with the necessary information and that attachment accompanies the warrant.  *Rivera Rodriguez v. Beninato*, 469 F.3d 1, 5 (1st Cir. 2006) ("Here, the warrant stated, "See attached affidavit," language which suffices to incorporate the affidavit."); *see Groh*, 540 U.S. at 557-58 (collecting cases and noting "[b]ut in this case the warrant did not incorporate other documents by reference").  Each search warrant included an attachment describing items to be searched and that attachment accompanied the warrants.  ECF 54-2, 54-3 ("The person or property to be searched, described above, is believed to conceal evidence, fruits, and instrumentalities of a crime, as more fully described in Attachment B." (parenthetical omitted)).

2.     *The Attachment to the Warrant is Valid*

A search warrant may allow the seizure of categories of information.  *See Andresen v. Maryland*, 427 U.S. 463, 479-81 (allowing seizure of "fruits, instrumentalities and evidence of crime at this [time] unknown" because, when read in context, warrant authorized only seizure of evidence relevant to the specific crime alleged); *United States v. Timpani*, 665 F.2d 1, 5 (1st Cir. 1981) ( "When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of the items he is seeking." (citation omitted)); *see also* 41 Geo. L.J. Ann. Rev. Crim. Proc. 34-37 ("A warrant may authorize the seizure of an entire class of items if the warrant is sufficiently particular to establish probable cause to support the seizure of the entire class and a more precise description is not possible").

Furthermore, if criminal activity pervades a business, then seizure of all business records—paper and electronic— is proper.[6] *See United States v. Falon*, 959 F.2d 1143, 1147–48 (1st Cir. 1992) (allowing seizure of all business records in a fraud investigation); *Timpani*, 665 F.2d at 4-5 ("any and all records relating to extortionate credit transactions"); *United States v. Brien*, 617 F.2d 299, 309 n.11 (1st Cir.), cert. denied, 446 U.S. 919 (1980) ("We hold that where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are, as here, accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized."); *see also United States v. Bradley*, 644 F.3d 1213, 1259-60 (11th Cir. 2011) (allowing seizure of electronic and paper records "when evidence of fraud is likely to be found in a broad spectrum of the defendant company's business records"); *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997) (finding an "all records" search proper "[w]here probable cause exist[ed] to believe ... that all the records of a business are likely to constitute evidence" (citation omitted)).  In determining the pervasiveness of the criminal activity, courts look at the people involved rather than the percentage of the business that is criminal.  *See Bradley*, 644 F.3d at 1259  ("the

---

[6] In circumstances where criminal activity does not pervade the entire business, the First Circuit has found that a warrant is not particular if it is imprecise or allows the seizure of items it should not. *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("[O]ne [concern about particularity] is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take, and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." (citations omitted)); *see also Andresen v. Maryland*, 427 U.S. 463, 480-81 n.10 (1976) (validating warrant in real estate fraud case allowing seizure of specific items related to the fraud as well as "other fruits, instrumentalities and evidence of crime at this (time) unknown"); *United States v. Parker*, 549 F.3d 5, 10 (1st Cir. 2008) (allowing seizure of  "weapons" and "illicit drugs"); *United States v. Morris*, 977 F.2d 677, 680–81 (1st Cir. 1992) (allowing seizure "all that is relating [sic] to drugs and narcotics").  This warrant is similar to the warrant in *Andresen*, 427 U.S. at 480-81 n.10, in that, when read with Attachment B to the supporting affidavit it lists specific items to be seized, as well as "all items" that are "fruits, instrumentalities and evidence" of the crime described in detail in the affidavit.  However, unlike in Andresen, this warrant requires that the items and records be related to the defendants as well as the crime. The warrants and affidavit are precise and provide sufficient guidance to seizing agents to prevent the seizure of improper items.  Evidence of this includes the fact that agents only seized the specific items listed or items that fell under an a exception to the warrant requirement.

doctrine is concerned with the breadth of the alleged fraud—whether evidence of fraud is likely to be found in records related to a wide range of company business").

In his motion, the Defendant relies on *United States v. Abrams*, 615 F.2d 541, 546-47 (1st Cir. 1980) (invalidating warrant that allowed broad seizure of patient files and other records from a doctor's office where many documents related to legal business) and *United States v. Klein*, 565 F.2d 183 (1977) (invalidating warrant for pirated audiotapes that were mingled with legal tapes).

The description of items to be seized listed in the challenged warrants provided to the magistrate judge in support of the request for a warrant and specifically incorporated by reference in the warrant itself does not remotely resemble the descriptions provided by the applicants in *Abrams* or *Klein*. Attachment B to the warrant articulated in exquisite detail the types of evidence the agents were authorized to search for and seize. The defendant's claim that the warrant lacks particularly rings hollow when juxtaposed against the actual language of the descriptive document.  Even a casual reading of Attachment B evidences the type of conscientious thought that the investigator devoted to meeting the particularity requirement.

The  First Circuit has also distinguished those cases in *Timpani*, stating:

Each item is plausibly related to the crime-loansharking or gambling-that is specifically set out. The items, for the most part, are the very instrumentalities of those crimes. The items are not likely to be mixed up with a far larger set of similar, but innocent, items as if, for example, they were in an accountant's office. The warrants provide a standard for segregating the "innocent" from the "culpable" in the form of requiring a connection with a specific, identifiable crime.  The affidavits suggest the executing officers will be able to use that standard.  And, most important, it is difficult to see how the search warrant could have been made significantly more precise.

*Timpani*, 665 F.2d at 5 (citations omitted).  This logic holds even for seizures of business records from a residence.  *Id.*at 2.

In this case, agents had reason to believe that fraud pervaded the entirety of the Jeremiah's business and involved all of their employees.  Significantly, both Jeremiah brothers were involved in the theft of the oil.  In recorded conversations, Andrew Jeremiah advised his coconspirator, Anthony Simone that he should travel to Connecticut and steal the oil there so as to "spread it out."   Andrew Jeremiah was then recorded explaining to Simone the modifications he intended to make to his pick-up truck to allow it to be used to commit additional thefts.  ECF 54-5 ¶¶ 54, 56.  Those recorded conversations took place at the Jeremiahs' residence.   In addition, agents were (and remain) unable to locate more than a few legitimate customers of the Jeremiahs..  In point of fact, Attachment B authorized the agents to search for customer lists to determine to what extent they may have had some legitimate source of supply for the vegetable oil.  The theft of oil pervaded defendants' business and daily lives.  Therefore, as in *Timpani*, all records were likely to shed light on the scheme.  Additionally, it would have been difficult to craft a more precise description and the affidavit along with Attachment B provided the agents with the ability to distinguish relevant and irrelevant records.

**B.      The Truck is Listed on Attachment B**

As was referenced above, the defendant alleges that the truck that was seized was not listed on the warrant attachment.  This is incorrect.  Part 1.b. of Attachment B to the warehouse warrant includes "equipment used to process, store, and transport the stolen oil, including *vehicles* . . ." ECF 54-5 (emphasis added).  As detailed in the search warrant affidavit, agents observed the seized truck transporting stolen oil.  Therefore seizure of the truck was proper.  In any event, even if the truck had not been listed in the items to be seized, the agents were lawfully in the defendant's business pursuant to a search warrant.  While in a place they had a right to be

they observed an item that was readily apparent to them to be an instrumentality of the crime

they were investigating.  No clearer an example of the plain view doctrine can be imagined.

### C.      Return of Items

In his motion to suppress, the Defendant asks for the return of property he believes was

improperly seized.  As set forth in the Government's Memorandum of Law in Opposition to

Defendant's Motion for Replevin ECF-54-1, the remedy for an improper seizure is suppression,

not the return of an item.  Furthermore:

> There is a presumption that the United States may retain property necessary to
> investigate or prosecute federal crimes. [Fed. R. Crim. P. Advisory committee's
> note (1989).]  However, the United States may not retain property if its
> "legitimate interests can be satisfied even if the property is returned." *Id.*  When
> returning property, a court "may impose reasonable conditions to protect access to
> the property and its use in later proceedings."  Rule 41(g).  Although the
> Defendant's motion focuses on the validity of the search warrant, the Government
> may generally retain illegally seized evidence provided there was not gross
> government misconduct.

*Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993).

 On July 30, 2013, this Court held that the Defendant was not entitled to the return of the

property.  The United States still requires the property as evidence.  Therefore the Court should

not order the return of the property.

### D.      Items in Plain View

The Defendant argues cash seized from the residence and oil seized from the warehouse

should be suppressed.  He argues that the oil is no longer in the same form it was in when

collected and that the money derives from an innocent activity and was not listed on the warrant.

During a search pursuant to a warrant, items outside the warrant are suppressed, unless an

exception to the warrant requirement applies.  *United States v. Antrim*, 389 F.3d 276, 283 (1st

Cir. 2004) (citing *Horton v. California*, 496 U.S. 128, 138–39 (1990); *see United States v. Fallon*, 959 F.2d 1143, 1149 (1st Cir. 1992) (The remedy in the case of a seizure that casts its net too broadly is . . . not blanket suppression but partial suppression"). One such exception is the plain view exception. *See Antrim*, 389 F.3d at 283 (1st Cir. 2004)  "Plain view seizures are lawful if (1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard;[7] and (3) the seizing officer had a lawful right of access to the object itself." *Id.* Seizure of the cash was valid under the plain view rue because agents lawfully searched the boot which easily could be imagined to be a repository of records of an illicit business such as was being carried on by the defendant. During a search of a residence, "any container situated within residential premises . . . may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant. In determining whether it is reasonable to search a particular container for an object, search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided."  *United States v. Rogers*, 521 F.3d 5 (1st Cir. 2008) (citations omitted); *see United States v. Crooke*, 688 F.3d 1, 8 (1st Cir. 2012) ("The warrant in this case permitted agents to search for items as small as grains of powder. Thus, the agents had a right to search the tackle box").

Probable cause exists when there is a "fair probability" or "reasonable likelihood that evidence of a crime will be found in the place to be searched." *United States v. Clark* 685 F.3d 72, 76 (1st Cir. 2012) (citing Illinois v. Gates 462 U.S. 213, 238 (1983)).  "It merely requires that

---

[7] Although the incriminating character of evidence be "immediately apparent," the First Circuit defines "[i]mmediately apparent . . . as probable cause to believe the item is contraband or evidence of a crime." *United States v. Giannetta*, 909 F.2d 571, 578 (1st Cir. 1990);  *see United States v. Jones* 187 F.3d 210, 220 n.12 (1st Cir. 1999) ("Most recent cases use the clearer "probable cause" language, however, and at least one case criticizes the "immediately apparent" characterization as 'an unhappy choice of words' that may 'imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine.'" (quoting *Texas v. Brown*, 460 U.S. 730, 741 (1983))

the facts available to the officer would warrant a man of reasonable caution in the belief that

certain items may be contraband or stolen property or useful as evidence of a crime; it does not

demand any showing that such a belief be correct or more likely true than false." *United States*

*v. Jones*, 187 F.3d 210 (1st Cir. 1999).  Therefore, neither "certainty [n]or an unusually high

degree of assurance" is required.  *Clark*, 685 F.3d at 76 (citation omitted).    Probable cause is

examined objectively by analyzing "the totality of the circumstances reasonably inferable from

the affidavits." *United States v. Zayar-Diaz*, 95 F.3d 105, 112-13 (1st Cir. 1996).

In the context of a plain view search, there need only "be enough facts for a reasonable

person to believe that the items in plain view may be contraband or evidence of a crime." *United*

*States v. Giannetta*, 909 F.2d 571, 579 (1st Cir. 1990); *see United States v. Paneto*, 661 F.3d

709, 714 (1st Cir. 2011) (During a plain view seizure, "[t]he officer need not be certain of the

incriminating character of an object, but, rather, must have a belief based on a practical,

nontechnical probability that the object is evidence of a crime." (citation omitted)).  Agents had

probable cause to seize the money.[8]  At the time the seizing agent viewed the money, the agents

had enough information to reasonably believe that the money "may be . . . evidence of a crime."

*United States v. Giannetta*, 909 at 579.  First, agents found other incriminating evidence

including business records related to illegal activity in the same general location as the money .

Second, agents knew that the house was the headquarters of the illegal activity.  ECF 54-5 ¶¶ 53-

57.  Third, agents knew that the defendants conducted their illegal business in cash, including

regularly paying Simone at that location for the theft of the oil.  *Id.* at  ¶¶ 56, 57.  Fourth, agents

knew the activity was ongoing and profitable.  Fifth, Bruce Jeremiah had told the Code

Enforcement official that he worked for free and had no income.  Sixth, agents found the large

---

[8] Even if the Court finds that the agents did not have probable cause that the money was evidence, the fact that the agents found actual $29,230 money inside a boot should not be suppressed since agents were allowed to view and count the money.

amount cash to be consistent with being the proceeds of the type of criminal activity they were

charged with investigating.  The discovery of bank records during the search debunked any

notion that the defendant was simply sitting on his hard earned savings out of a distrust of banks.

Indeed, contemporaneous with the filing of this motion to suppress the defendant moved to have

the government ordered to return $40,000 he claims belongs to him seized by the government

from the Bank of America. The $29,230 was properly seized because the agents were authorized

to search the entire house for papers, the boot was found inside the house, papers could be found

inside the boot, and the agents had probable cause to believe that the money might be evidence

of a crime.

The Oil Was in Plain View

Agents observed the Defendant Anthony Simone stealing oil and delivering it to the

warehouse.  ECF 54-5 ¶¶ 32, 46, 53.  During their investigation, agents failed to uncover any

legitimate recent oil collection by the defendants, and observed thousands of gallons being

stolen.  The agents therefore had lawful access to the oil.  The agents had probable cause to seize

the oil as contraband.  Whether or not the oil had been heated by the defendants is irrelevant.[9]

The oil is contraband and evidence of the conspiracy among the defendants to steal the raw oil.

Furthermore, as any "processing" was part of the conspiracy to transport the stolen oil across

state lines, the United States could seize the oil regardless of whether or not it was processed as

evidence of the crime.  The seizure was proper—agents had access to the oil and probable cause

to believe it was contraband, evidence, or fruits of a crime.

---

[9] Invoices from the Jeremiah's to the New Hampshire buyer of the oil only describe the oil as "used vegetable oil." Other records from the buyer describe it as "waste vegetable oil."

III.     CONCLUSION

The Defendant has failed to meet his burden that the challenged warrants were insufficiently particular. The warrant for the warehouse is sufficiently particular, even though the warehouse had multiple units because the Defendant had access to the entire structure searched and agents reasonably believed there were not multiple units. Any deficiency in the address of the warehouse is immaterial because the warehouse was described in detail and a photo was included in the affidavit. In addition, the warrants in this case validly incorporated an attachment describing the items to be seized. The warrants for the warehouse and residence properly allowed the seizure of all business records because criminal activity pervaded the defendant's business.

Even if the warrants were invalid, suppression would not be proper because the defendant has failed to show that, in violation of the good faith exception, agents 1) failed to have an objectively reasonable belief that the warrant was valid; 2) were dishonest or reckless in preparing their affidavit; or 3) improperly executed the warrant.

Last but not least, the other items seized, including the truck, oil, and cash, were included in the list of items to be seized or were in plain view of the agents. Therefore the Defendant's motions for suppression should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

PETER F. NERONHA
United States Attorney

/s/ William J. Ferland
WILLIAM J. FERLAND
Assistant United States Attorney
Office of the United States Attorney
District of Rhode Island
50 Kennedy Plaza 8th flr.
Providence, RI 02903
William.ferland@usdoj.gov

/s/ Benjamin S. Towbin
BENJAMIN S. TOWBIN
Special Assistant United States Attorney
New York Bar #5061726
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5046
(401) 709-5001 (fax)
Benjamin.towbin@usdoj.gov

## CERTIFICATION

I hereby certify that on September 11, 2013, a copy of the within Government's Omnibus Memorandum of Law in Opposition to Defendant's Motions to Suppress was filed electronically and is available for viewing and downloading from the ECF system.

/s/ WILLIAM J. FERLAND